UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JAMES PLUMLEY and
TRESHA PLUMLEY

      Plaintiffs

v.                                        Civil Action No. 2:11-00311

PROGRESSIVE CLASSIC INSURANCE CO.,

      Defendant

<u>MEMORANDUM OPINION AND ORDER</u>

      Pending is defendant Progressive Classic Insurance
Company's ("Progressive") motion for summary judgment, filed
February 22, 2012.

I.

      Plaintiffs James and Tresha Plumley are West
Virginia citizens.  Progressive is a Wisconsin citizen.
Ronald Kanouse, a nonparty, is an Ohio citizen.  On July 7,
2009, Mr. Plumley was operating his 2007 Harley Davidson.
Mr. Kanouse was driving his 2009 Ford F-350.  The two
motorists were near the intersection of South Eisenhower
Drive and New Jersey Avenue in Beckley when Mr. Kanouse
collided with Mr. Plumley.  Mr. Kanouse was an underinsured
motorist.

Mr. Plumley suffered serious and permanent injuries to his left tibia, left thumb, and left knee.  He incurred medical expenses exceeding $35,000, with more outlays expected in the future.  Mr. Plumley also expects to suffer future pain, suffering, emotional distress, and a diminished capacity to enjoy life as a result of the collision.  Mrs. Plumley alleges that she will suffer the loss of her spouse's consortium.

The Plumley's settled their claim with Mr. Kanouse's insurance carrier for the $50,000 policy limits.  On the date of the collision, the Plumleys were party to a policy of insurance issued by Progressive.  The policy included underinsured motorist coverage in the amount of $100,000.

Prior to retaining counsel, the Plumleys, on a date unstated in the briefing, submitted the applicable medical records to Progressive in support of their underinsurance claim. Progressive declined to offer the policy limits at that time. The Plumleys then retained counsel.  On August 5, 2010, the Plumleys provided Progressive with an estimate for Mr. Plumley's knee-replacement surgery, along with copies of two letters from his treating physician.  On August 27, 2010, Progressive offered the $100,000 policy limits to the Plumleys.  As an apparent condition of the settlement, the Plumleys, on September 2, 2010,

2

signed a Release of Contractual Liability ("release"), which

states materially as follows:

> For and in consideration of the payment of the sum of
> one hundred thousand Dollars ($100,000.00) . . . to
> James Plumley and Tresha Plumley, individually and as
> husband and wife, only, hereinafter, "Insured," the
> receipt and sufficiency of which is hereby
> acknowledged, Insured does hereby release, discharge
> and forever acquit Progressive of and from any and all
> claims, demands, sums of money, actions, rights,
> causes of action, obligations and liabilities of any
> kind or nature whatsoever pursuant or under the PART
> III-UNINSURED/UNDERINSURED MOTORIST COVERAGE
> provisions of Policy Number 17071236 which arise out
> of or are in any manner whatsoever, directly
> or indirectly, connected with or related to a
> vehicular collision or incident which took place on
> July 7, 2009, in Beckley, WV. This instrument is
> intended as a release of contractual liability only
> and not a release of tort liability of any person who
> may have been at fault or liable for the referenced
> vehicular collision or incident.

(Ex. B, Def.'s Mot. Summ. J.)

On April 4, 2011, the Plumleys instituted this action.

Their claims are found in the following three paragraphs of the

complaint:

> At all times pertinent hereto, Defendant Progressive
> Classic Insurance Company engaged in unfair trade
> practices as proscribed by West Virginia Code §33-11-
> 4[(9)] subsections (a), (f), (g), (h), (m), and (n),
> and West Virginia Insurance Regulations §114-14-1, et
> seq., with such frequency as to constitute a general
> business practice in connection with claims for
> insurance proceeds. Further, Defendant refused to
> negotiate in good faith or make a fair offer of
> settlement to Plaintiffs.

> As a direct and proximate result of the unfair claims
> settlement practices and unlawful acts of Defendant

3

Progressive Classic Insurance Company, the Plaintiffs suffered a delay in the settlement of his underinsured personal injury claim with Progressive Classic Insurance Company and otherwise suffered annoyance, inconvenience and aggravation, as well as a loss of the use of the proceeds of settlement, consistent with the damages provided by <u>Hayseeds, Inc. v. State Farm Fire & Casualty</u>, 352 S.E.2d 73 (1986) and its progeny of first-party bad faith cases.

The Defendant breached its contract of insurance with Plaintiffs.

(Compl. ¶¶ 17-19).

The court understands these allegations to state claims for (1) multiple violations of that portion of the West Virginia Insurance Code, West Virginia Code section 33-11-4(9), dealing with unfair claim settlement practices, sometimes referred to as the West Virginia Unfair Trade Practices Act ("WVUTPA"), (2) recovery of damages pursuant to <u>Hayseeds, Inc. v. State Farm Fire & Casualty</u>, 177 W. Va. 323, 324, 352 S.E.2d 73, 74 (1986), and (3) breach of contract.

On May 6, 2011, Progressive removed.  It now seeks summary judgment based upon the release language.

4

II.

A.    Summary Judgment Standard


       A party is entitled to summary judgment "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  Material facts are
those necessary to establish the elements of a party's cause of
action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
(1986).

       A genuine issue of material fact exists if, in viewing
the record and all reasonable inferences drawn therefrom in a
light most favorable to the non-moving party, a reasonable fact-
finder could return a verdict for the non-movant.  <u>Id.</u>  The
moving party has the burden of showing -- "that is, pointing out
to the district court -- that there is an absence of evidence to
support the nonmoving party's case."  <u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 325 (1986).  If the movant satisfies this burden,
then the non-movant must set forth specific facts as would be
admissible in evidence that demonstrate the existence of a
genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); <u>id.</u> at

5

322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

6

B.   Analysis

The release qualifies as a contract, bearing some of the hallmarks of a settlement agreement.  That characterization is significant inasmuch as a "[s]ettlement agreement is favored by law and is to be construed as any other contract." Floyd v. Watson, 163 W. Va. 65, 68, 254 S.E.2d 687, 690 (1979) (internal citations omitted).  As with any type of accord, "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent."  Syl. pt. 1, Wellington Power Corp. v. CNA Sur. Corp., 217 W. Va. 33, 35, 614 S.E.2d 680, 682 (2005) (quoting Syl. Pt. 1, Cotiga Development Co. v. United Fuel Gas Co., 147 W. Va. 484, 488, 128 S.E.2d 626, 628 (1962)).

The same is true in the insurance setting: "'Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.'"  Syl. pt. 2, West Virginia Fire & Cas. Co. v. Stanley, 216 W. Va. 40, 43, 602 S.E.2d 483, 486 (2004) (quoting syl., Keffer v. Prudential Ins. Co., 153 W. Va. 813,

7

813, 172 S.E.2d 714, 714 (1970)).  When the parties disagree
respecting the terms of a contract, the court must ascertain if
the disputed portions of the accord are ambiguous.  A
contractual term is ambiguous if it "is reasonably susceptible
of two different meanings or is of such doubtful meaning that
reasonable minds might be uncertain or disagree as to its
meaning . . . ."  <u>Mylan Laboratories Inc. v. American Motorists
Ins. Co.</u>, 226 W. Va. 307, 313-14, 700 S.E.2d 518, 524-25 (2010)
(quoting syl. pt. 1, <u>Prete v. Merchants Property Ins. Co.</u>, 159
W. Va. 508, 508, 223 S.E.2d 441, 442 (1976)).  When an ambiguity
is found in an insurance contract, certain rules of construction
apply:

> If a court determines that a policy provision is
> ambiguous, "[i]t is well settled law in West Virginia
> that ambiguous terms in insurance contracts are to be
> strictly construed against the insurance company and
> in favor of the insured."

<u>Id.</u> at 314, 700 S.E.2d at 525.

Progressive relies upon the broad language releasing
it "of and from any and all claims, demands, sums of money,
actions, rights, causes of action, obligations and liabilities
of any kind or nature whatsoever pursuant or under the PART III-
UNINSURED/UNDERINSURED MOTORIST COVERAGE provisions of Policy
Number 17071236 which arise out of or are in any manner

whatsoever, directly or indirectly, connected with or related to" the collision.

Uncertainty arises, however, when this paragraph of the release is read in its entirety. The next sentence of the release provides as follows: "<u>This instrument is intended as a release of contractual liability only</u> and not a release of tort liability of any person who may have been at fault or liable for the referenced vehicular collision or incident." (emphasis added).

One might reasonably read this provision, in a confined context, as a narrow carve out to reassure the Plumleys that they were not abandoning any potential future tort claims against Mr. Kanouse, although as a practical matter his exposure may have terminated when his insurer paid his policy limits to the Plumleys. An additional and more reasonable reading of this somewhat ambiguous provision is that the release does not reach tort claims at all, including those that might be pled against Progressive. In light of this ambiguity, and that Progressive drafted the release, the aforementioned language is construed against Progressive so as to permit the Plumleys to raise any extracontractual claims that they may have pled despite the release.

The foregoing discussion thus requires that each of the three claims pled by the Plumleys be analyzed to ascertain if they sound in contract and are barred by the release or are instead of a tort variety and unaffected by the release.  The breach of contract claim is obviously barred by the release.  The WVUTPA claim is not.  The Supreme Court of Appeals of West Virginia has stated as follows:

> We first address the nature of a claim brought under the [West Virginia Unfair Claims Settlement Practices] Act. While Plaintiffs contend that unfair settlement claims are contractual in nature, this Court made clear in Poling v. Motorists Mutual Insurance Co., 192 W.Va. 46, 450 S.E.2d 635 (1994), that a "[v]iolation of ... [the Act] is tortious conduct." Id. at 49, 450 S.E.2d at 638.

Wilt v. State Auto. Mut. Ins. Co., 203 W. Va. 165, 166, 506 S.E.2d 608, 609 (1998) (emphasis added).  It appears that the same rule applies to the Hayseeds component.  See, e.g., Noland v. Virginia Ins. Reciprocal, 224 W. Va. 372, 382-83, 686 S.E.2d 23, 33-34 (2009) (noting first that "[a] common law bad faith cause of action was first recognized in Hayseeds" and later observing that "[t]he prior decisions of this Court have clearly indicated that a common law bad faith claim sounds in tort.").

The court, accordingly, ORDERS that Progressive's motion for summary judgment be, and it hereby is granted with respect to the contract claim and denied in all other respects.

The Clerk is directed to transmit a copy of this written opinion and order to counsel of record and any unrepresented parties.

DATED:  May 8, 2012

John T. Copenhaver, Jr.
United States District Judge